UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARCOS PEÑA, | § | Civil No. 22-01092-XR |
| | § | |
| Plaintiff, | § | |
| | § | AMENDED COMPLAINT FOR |
| v. | § | DAMAGES AND EQUITABLE RELIEF |
| | § | |
| JOHN DOE, an individual, and DOES 2-25, | § | |
| | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| Tether, Ltd., | § | |
| | § | |
| Third-Party Defendant. | § | |

Plaintiff Marcos Peña brings this case against fictitious defendant John Doe 1, and fictitious defendants Does 2-25, by and through his attorneys, upon personal knowledge as to his own conduct, and upon information and belief as to the conduct of others, as follows:

## INTRODUCTION

1. Plaintiff Marcos Peña is the victim of a cryptocurrency scam.

2. John Doe 1 used fraudulent tactics to persuade Mr. Peña to transfer $312,000 to a cryptocurrency exchange for trading.

3. Unbeknownst to Mr. Peña, the exchange did not exist and John Doe 1 stole Mr. Peña's investments.

## PARTIES

4. Plaintiff Marcos Peña is an individual who resides in San Antonio, Texas.

5. John Doe 1 went by the name "Irina" when communicating with Mr. Peña. Although "Irina" stated that she lived in New York, John Doe 1 is actually a citizen of the People's Republic of China and operates out of the Lao People's Democratic Republic (Laos).

6. Does 2-25 are unknown parties who participated in the fraud.

7. Necessary third-party Tether Ltd. is an entity organized under the laws of Hong Kong. Tether Ltd. creates and redeems USDT, and maintains the much-touted "one to one" dollar backing for USDT. Tether Ltd. also created and maintains the smart contract with which users of Tether must interact when transferring or converting Tether. Tether advertises and promotes the use of USDT on its website (Tether.to) in this District and throughout the United States. Tether is also one of the "top 22" purchasers of U.S. Treasuries.[1]

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. §1332(a). Plaintiff is a resident of San Antonio, Texas. The case involves more than $75,000.

9. This Court has specific personal jurisdiction over John Doe 1 because John Doe 1 committed an intentional tort; Plaintiff suffered the harm from the tort in this District; and John Doe 1directed the fraudulent conduct at Texas.

10. This Court has personal jurisdiction over Tether Ltd. because Tether has issued roughly $73 billion in USDT, much of which circulates among Americans and U.S.- based cryptocurrency exchanges. Tether has purposefully directed its activities to the United States and to this District.

11. Venue is appropriate in this District because Plaintiff Marcos Peña is a resident of this District and the cause of action arose in this District. Plaintiff conducted the transactions referred to herein from San Antonio, Texas.

## FACTUAL ALLEGATIONS

12. On or around May 6, 2022 Plaintiff Marcos Peña began an online correspondence with someone who went by the name "Irina" on the message platform WhatsApp.

13. Irina told Mr. Peña that she lived in New York.

14. On or around May 8, 2022 Irina told Plaintiff that she had just made a short-term profit trading bitcoin of over $14,000 and sent Plaintiff a screenshot of her account.

15. Irina told Mr. Peña that she had had great success trading cryptocurrency on an exchange called "BitProCorp."

16. The company's website is www.bitprocorp.com.

---

[1] https://tether.to/en/tether-usdt-and-us-treasury-dynamics/.

17. Mr. Peña accessed the website and believed BitProCorp was a legitimate exchange.

18. Irina showed Mr. Peña screenshots of her BitProCorp account as proof.

19. Irina also showed Mr. Peña how to set up an account with BitProCorp, how to fund that account, and how to withdraw assets from the account.

20. On or around May 14, 2022, Mr. Peña sent small amounts of cryptocurrency to his new BitProCorp account, and on two occasions withdrew small amounts which were promptly transferred to him.

21. As a result, Mr. Peña believed that BitProCorp was legitimate and that he could withdraw his assets when he chose to do so.

22. On May 19, 2022 Mr. Peña transferred 2000 U.S. Dollar Coin (USDC) tokens to crypto wallet address 0x45f41cfF9dBD9d68a255d260aB2D0129d72C9424 ("Fake Address 1").

23. On May 25, 2022 Mr. Peña transferred 8000 USDC tokens to crypto wallet address 0x39a1461e72eBE7250DC76A8EEdd6c07A1f6E4596 ("Fake Address 2").

24. Mr. Peña would periodically check his account at BitProCorp and saw that his investment was growing. For example, on or about May 25, 2022 Plaintiff checked his BitProCorp account and saw that it had risen to $13,000.

25. On June 27, 2022 Mr. Peña transferred 27,000 USDC tokens to crypto wallet address 0xa9eC4cD43Fbb4284b2DfB5B01eBAe0bF93908312 ("Fake Address 3").

26. On July 27, 2022 Mr. Peña transferred 150,000 USDC tokens to crypto wallet address 0xCb17fB41C5c5141b8149e73619FD00EeB9b4E9Ee ("Fake Address 4").

27. On August 8, 2022 Mr. Peña transferred 85,000 more USDC tokens to Fake Address 4.

28. On August 18, 2022 Mr. Peña transferred 40,000 Tether tokens (USDT), which he purchased from the U.S.-based cryptocurrency exchange Coinbase, to crypto wallet address 0x33314FeE90e75A9198BbeE43b652228dcA9Ce5f3 ("Fake Address 5"). When Mr. Peña purchased the USDT, and again when he transferred the USDT, Mr. Peña interacted with Tether Ltd.'s smart contract.

29. On or about August 24, 2022 Plaintiff attempted to withdraw $200,000 from his BitProCorp account.

30. However, he found that he could not do so.

31. When he tried, he received a message from BitProCorp's customer service center that he needed to have a "Premium" account to make withdrawals, which would cost $100,000.

32. On or about September 4, 2022 Mr. Peña asked Irina about the Premium membership and Irina said that she had been a Premium member for several years.

33. Irina also told him to do whatever he wanted to do and not to complain to her. She also accused Mr. Peña of lying about his losses.

34. "BitProCorp" has been identified as a scam exchange in different cryptocurrency forums and on social media. See, e.g. bitcointalk.org ("…however this crypt exchange will lure you in by showing you that you can make significant amount of money using short term delivery contracts, until you try to withdrawal you [sic] funds, they freeze your account and indicate you have to pay 20% of your balance in order to withdrawal"); scamdoc.com ("This website is a scam").

**Tracking John Doe 1**

35. One of the features of blockchain technology is transparency. A record of the movement and transfers of various assets can be reviewed on the Ethereum blockchain. Each transaction has a unique identifier.

36. Another feature of blockchain technology is its relative anonymity. Blockchain users are identified by their public wallet addresses, not their names.

37. As is typical in cryptocurrency thefts, John Doe 1 has moved the Stolen Assets many times to try to obscure the trail.

38. Plaintiff and his consultant, Coinfirm, have tracked the Stolen Assets as they have been moved through different wallets.

39. Some of these wallets and transactions are associated with cryptocurrency exchanges that trade in and exchange cryptocurrency for traditional currency or other assets.

40. These exchanges have the actual identity of the parties conducting businesses on the exchanges, including, names, dates of birth, government identification, residence, business location, phone and email.

41. Plaintiff and his expert have tracked the Stolen Assets to transactions and wallets associated with the cryptocurrency exchanges Binance, Huobi.com, and OKEx.

42. Specifically, Coinfirm has traced the Stolen Assets as follows:

| Exchange | Account Address | Stolen Assets |
|---|---|---|
| Binance | 0x48f4afdaf3beecd740929bd7f413ae3b93f06a13 | 39,245 Tether |
| Huobi.com | 0x1f7fee82886fdbdbb662adfb5179f37b0eb35a4d | 86,512 USDC |
| OKEx | 0x776c131f3711d4dcdbc8b6bbb1276e4edcadbb8b | 185,483 USDC |

43. Some of Mr. Peña's assets have been tracked to wallets on the TRON blockchain. In addition, Mr. Peña's Stolen Assets (at the last known transactions) were in the form of Tether and U.S. Dollar Coin ("USDC") tokens. The organizations that manage the protocols for Tether and USDC are able to freeze Tether and USDC in digital wallets if instructed to do so.

## CAUSES OF ACTION

### COUNT ONE
### Common Law Fraud

44. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

45. Between May 6, 2022 and September 4, 2022 John Doe (aka "Irina") represented to Plaintiff that BitProCorp was a legitimate cryptocurrency exchange and that John Doe had profited from trading on the exchange.

46. John Doe also recommended specific trades to Plaintiff.

47. Plaintiff believed, and relied upon, John Doe's representations.

48. Plaintiff invested roughly $312,000 with BitProCorp.

49. However, when on or around August 24, 2022 Plaintiff attempted to withdraw some of his assets, he could not do so.

50. Plaintiff is entitled to actual, compensatory, and punitive damages.

### COUNT TWO
### Conversion

51. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

52. Before Plaintiff transferred the Stolen Assets to BitProCorp, Plaintiff owned and had the right to possess the Stolen Assets.

53. Once Plaintiff transferred the Stolen Assets to BitProCorp, John Doe intentionally took possession of, and assumed control over, the Stolen Assets.

54. John Doe has intentionally exercised control, and continues to exercise control, over the Stolen Assets in such a way as to preclude Plaintiff from using or possessing the Stolen Assets.

55. John Doe knew the Stolen Assets were stolen or obtained in a manner constituting theft.

56. Accordingly, John Doe wrongfully converted the Stolen Assets.

57. As a direct and proximate result of the conversion, Plaintiff suffered damages and continues to suffer damages as long as the Stolen Assets are in the possession of John Doe.

58. Plaintiff is entitled to actual damages, compensatory damages, interest, expenses, and any other relief the court deems just and proper.

## COUNT THREE
### Unjust Enrichment

59. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

60. John Doe obtained a benefit when John Doe took possession of the Stolen Assets.

61. Under the circumstances, it would be against equity and good conscience to permit John Doe to retain the Stolen Assets.

62. Plaintiff is entitled to restitution and such other relief as the court deems just and proper.

## COUNT FOUR
### Imposition Of Constructive Trust And Disgorgement Of Funds

63. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

64. Plaintiff requests the imposition of a constructive trust upon the property that was stolen from him by John Doe.

65. John Doe, through fraud, stole Plaintiff's cryptocurrency which in equity and good conscience John Doe should not be permitted to hold.

66. The assets stolen by John Doe are specific and identifiable property and can be traced to John Doe.

67. The Stolen Assets being held by John Doe must be held in trust for Plaintiff because John Doe is not entitled to the benefits of the Stolen Assets.

68. The Stolen Assets being held by John Doe in John Doe's wallets must be disgorged to Plaintiff because John Doe is not entitled to the benefits of the Stolen Assets.

## COUNT FIVE
### For Equitable Relief In The Form Of Accounting Of Stolen Assets

69. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

70. Plaintiff requests the equitable relief of an accounting of the current value and location of Plaintiff's Stolen Assets.

## COUNT SIX
### For Equitable Relief In The Form Of Freezing Assets Of John Doe And Enjoining Current Holders Of Stolen Assets From Transferring Or Disposing Of The Stolen Assets

71. Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

72. Defendant John Doe has moved plaintiff's Stolen Assets to various different wallets and accounts controlled by John Doe.

73. In order to further prevent the dissipation of the Stolen Assets, plaintiff requests an Order freezing the Stolen Assets.

74. In order to further prevent the dissipation of the Stolen Assets, Plaintiff requests an Order enjoining the transfer or disposition of those assets any unknown parties who currently possess Plaintiff's Stolen Assets.

75. Plaintiff also requests an Order freezing any assets belonging to John Doe that can be identified in order to satisfy a judgment against John Doe.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in his favor and against defendant John Doe as follows:

a. An injunction ordering John Doe to refrain from any further transfer, trade, sale or any other disposition of Plaintiff's Stolen Assets;

b. An injunction ordering John Doe to disgorge the Stolen Assets;

c. An injunction freezing the Stolen Assets;

d. An injunction preventing any holders of John Doe's Stolen Assets from transferring or otherwise disposing of the Stolen Assets.

e. An injunction freezing any of John Doe's assets that can be located;

f. An order awarding Plaintiff actual, compensatory and consequential damages;

g. An order awarding Plaintiff punitive damages in an amount to be determined but no less than $1 million.

h. An order awarding Plaintiff pre- and post- judgment interest;

i. An order awarding Plaintiff attorney's fees, expert and consultant fees and expenses, and costs; and

j. Such other and further legal and equitable relief as the court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated: October 3, 2023

       WALSH PLLC

       By/s/ Bonner C. Walsh
       Bonner C. Walsh
       Texas Bar No. 24051766
       1561 Long Haul Road
       Grangeville, ID 83530
       Phone: (541) 359-2827
       Fax: (866) 503-8206
       Bonner@walshpllc.com

       Adam Gonnelli
       *pro hac vice*
       LAW OFFICE OF ADAM R. GONNELLI, L.L.C.
       707 Alexander Road
       Building 2, Suite 208
       Princeton, New Jersey 08540
       phone: (917) 541-7110
       adam@arglawoffice.com

       Attorneys for Plaintiff

## CERTIFICATE OF NON-SERVICE

Plaintiff will serve John Doe 1 in accordance with the Court's instructions in its Order of September 24, 2023, DE 15 at 12. Plaintiff will attempt to serve third-party Tether Ltd. once summons issues.

/s/ Bonner C. Walsh  
Bonner C. Walsh
